HOWARD D. HUFFMAN, Plaintiff-Appellee, *v.* INLAND OIL & TRANSPORT CO., Defendant-Appellant.

Fifth District    No. 79-322

Opinion filed July 29, 1981.—Rehearing denied September 3, 1981.

Burton C. Bernard, of Bernard and Davidson, of Granite City, and Daryl F. Sohn and Gary T. Sacks, both of Goldstein and Price, of St. Louis, Missouri, for appellant.

Joseph Cohn, of Cohn, Carr, Korein, Kunin, Schlichter and Brennan, of East St. Louis, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Howard D. Huffman, brought action against defendant, Inland Oil & Transport Co., for injuries sustained by plaintiff while serving as a crew member on defendant's river towboat. The injuries allegedly occurred at a time when the vessel was located on the Tennessee River in the State of Alabama. Suit was brought in Madison County, Illinois, and following a jury trial, plaintiff was awarded damages in the amount of $185,000.

On appeal, defendant challenges the propriety of permitting the suit to be maintained in Illinois and urges (1) that the trial court erred in ruling that it had *in personam* jurisdiction over defendant and (2) that the court erred in denying defendant's motion to dismiss the complaint on the grounds of *forum non conveniens*.

Plaintiff filed suit in the circuit court of Madison County, seeking to

recover damages for injuries sustained in 1976 on the M/V Lady Marjorie. Suit was brought under the Jones Act (46 U.S.C. §688 (1976)) and general maritime law. Plaintiff purported to serve process by delivering a copy of the complaint and summons to Herbert Wolkowitz, president of Inland Oil & Transport Co., at the company's office in St. Louis, Missouri. Inland filed a special appearance for the purpose of objecting to the court's jurisdiction. The appearance was supported by an affidavit of Mr. Wolkowitz, which asserted, *inter alia*, that the incident referred to in plaintiff's complaint did not occur in the State of Illinois and that Inland had not at any relevant time been doing business within the State of Illinois.

Subsequently, plaintiff made a second attempt at service of process by delivering a copy of the complaint and summons to Max Terrell aboard the M/V Lady Rosemary, a river towboat operated by Inland, while the towboat was near Hartford, Illinois. Inland entered a second special appearance, again supported by an affidavit of Mr. Wolkowitz. The affidavit asserted that Max Terrell was not an officer or agent of Inland Oil and was not authorized to accept service of process on behalf of Inland. The affidavit further stated that Terrell, the pilot of the Lady Rosemary, was not a regular employee of Inland Oil but had been hired only as a trip pilot to relieve other towboat pilots employed by Inland. In addition, the affidavit asserted that any visits by any of Inland's river towboats within the State of Illinois were infrequent and sporadic in nature.

In response to the second special appearance, plaintiff filed the affidavits of Michael D. Lucey, Joseph Cohn, and Gary Oplt, all of whom were employees of the law firm which represented plaintiff. The affidavit of Michael D. Lucey asserts that Lucey inspected records maintained by the Corps of Engineers with respect to traffic passing through Lock and Dam No. 27 located near Granite City, Illinois, for the period from January through July 1977. Attached to the affidavit was a list which Lucey asserted showed dates of movements, points of origin, and points of destination of vessels operated by Inland Oil. While Lucey did not claim to have personal knowledge of the vessel movements, the exhibit reflected 34 instances of Inland vessels traveling through Lock and Dam No. 27.

The affidavit of Joseph Cohn consisted of conclusions derived from the data obtained by Michael Lucey. Cohn concluded that on 11 occasions from January through July 1977, Inland picked up a total of 44 barges at a refinery in Wood River, Illinois; on four occasions, Inland delivered a total of 10 empty barges to the Wood River refinery; on five occasions, a total of 20 loaded barges were delivered to Lockport, Illinois; twice Inland picked up empty barges at Lockport; three times Inland

delivered a total of 30 loaded barges to Peoria; and on three occasions, a total of 14 loaded barges were delivered in Chicago.

The affidavit of Gary Oplt asserted that Oplt contacted employees at Economy Boat Store in Wood River, who advised him that crew members of Inland vessels frequently purchase supplies, merchandise, and services from the store.

The fourth affidavit presented by plaintiff was that of Barry Wilson, a patrolman for the National Maritime Union. Mr. Wilson's affidavit set forth the customary duties of a pilot on a vessel navigating the Inland Waterway System.

Inland made no objection to the affidavits submitted by plaintiff and submitted no additional evidence or affidavits. After oral argument, the trial court overruled Inland's objection to jurisdiction, holding that both the service of process on Mr. Wolkowitz and Mr. Terrell conferred upon the court *in personam* jurisdiction over defendant.

Subsequently, defendant filed a motion to dismiss on the grounds of *forum non conveniens.* Attached was the affidavit of a defense attorney. The affidavit asserted that plaintiff was a Missouri resident, Inland was a Missouri corporation, and the accident occurred in Alabama; that the physicians who treated plaintiff and the hospitals at which plaintiff was treated were either in Missouri or Alabama; that all of the occurrence witnesses known to defendant were residents of Missouri; and that trial of the case in Madison County, Illinois, would unnecessarily burden defendant, the court, occurrence witnesses, treating physicians, and the taxpayers of Madison County. Plaintiff denied that the action had been filed in order to cause vexation to Inland or that the action would burden Inland or the witnesses. After a hearing, the motion to dismiss was denied.

At trial, witnesses established that the plaintiff lost three fingers of his right hand as a result of an incident in the pilothouse of the M/V Lady Marjorie, in which a defective hydraulic window caught and crushed plaintiff's hand. The jury found for plaintiff and rendered verdict in the amount of $185,000, and defendant appeals after judgment on the verdict was entered in favor of plaintiff. No issue is raised by defendant as to any alleged trial error.

Defendant's first allegation on appeal is that it is a foreign corporation and that the trial court erred in finding that it had *in personam* jurisdiction over it.

The relevant sections of the Civil Practice Act relating to service of process on private corporations (sections 13.3, 16(1), and 17(1)) provide as follows:

"A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other

manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals." (Ill. Rev. Stat. 1979, ch. 110, par. 13.3.)

"Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication." (Ill. Rev. Stat. 1979, ch. 110, par. 16(1).)

"Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

(c) The ownership, use, or possession of any real estate situated in this State;

(d) Contracting to insure any person, property or risk located within this State at the time of contracting;

(e) With respect to actions of dissolution of marriage and legal separation, the maintenance in this State of a matrimonial domicile. Ill. Rev. Stat. 1979, ch. 110, par. 17(1).

■■ Assuming compliance with Federal due process, it is for each State to determine to what extent it will extend *in personam* jurisdiction to foreign corporations. (*St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52.) The limits on State exercise of jurisdiction are not mechanical or quantitative (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154), but are found only in the requirement that provisions for jurisdiction be fair and reasonable under the circumstances. *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252.

In the past 100 years, the concept of *in personam* jurisdiction has developed from one which required service of process within the State (*Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L. Ed. 565) to one which satisfies the requirements of due process where either the act or transaction sued on occurs within the State or where defendant has engaged in a sufficiently substantial course of action in the State, provided always, however, that reasonable notice and opportunity to be heard are afforded. (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176

N.E.2d 761.) By their terms, sections 16 and 17 of the Civil Practice Act reflect a legislative intent to expand the jurisdiction of Illinois over nonresident defendants to the extent permitted by the requirement that due process of law be provided. *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673.

■■ Federal due process is not offended by a State's assertion of jurisdiction over a foreign corporation arising from out-of-State activities, providing that the business done in-State by the foreign corporation is sufficiently substantial. (*St. Louis-San Francisco Ry. v. Gitchoff*.) To justify exercise of jurisdiction over a foreign corporation in an action arising from the corporation's out-of-State activities, due process imposes two requirements. First, it must appear that the defendant over whom jurisdiction is asserted has had such "minimum contacts" with the State as to render it consistent with traditional notions of fair play and substantial justice that it be compelled to defend itself there. (*International Shoe Co. v. Washington*.) Second, assuming the requisite minimum contacts, a method of service must be employed which is reasonably designed to give the defendant actual notice of the pending action against it. *Milliken v. Meyer* (1940), 311 U.S. 457, 85 L. Ed. 278, 61 S. Ct. 339.

Under these principles, the inquiry into the State's exercise of jurisdiction over a foreign corporation appropriately no longer is based on whether the corporation was present within the State. Rather, the inquiry must determine whether there have been "such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." (*International Shoe Co.*, 326 U.S. 310, 317, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158; *Shaffer v. Heitner* (1977), 433 U.S. 186, 205, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2580.) Other courts describe the relevant inquiry as whether the nonresident individual or corporation has engaged in some act or conduct by which he or it may be said to have invoked the benefits and protection of the laws of the forum. *Hutter Northern Trust v. Door County Chamber of Commerce* (7th Cir. 1968), 403 F.2d 481.

In Illinois, jurisdiction over a foreign corporation may be founded upon two theories. First, a legislative enactment known as the long-arm statute, section 17 of the Civil Practice Act, allows the exercise of *in personam* jurisdiction over persons or corporations engaged in isolated acts within the State. (Ill. Rev. Stat. 1979, ch. 110, par. 17.) Under the statute, jurisdiction is limited to causes of action arising from the transaction of business within Illinois. The purpose of the limiting phrase "arising from" is to insure that there is a close relationship between a cause of action against a nonresident corporation and the business activities through which it submitted to Illinois jurisdiction. (*Volkswagen Insurance*

*Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 374 N.E.2d 954; *Dalton v. Blanford* (1978), 67 Ill. App. 3d 91, 383 N.E.2d 806.) In this manner, the statute itself insures that the cause of action is within the ambit of the State's legitimate protective policy. (*Nelson v. Miller*; *Braband v. Beech Aircraft Corp.*) The minimum relationship required is that the plaintiff's suit be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of Illinois courts. *Volkswagen Insurance Co. v. Whittington.*

■■ Obviously, the basis of plaintiff's suit in the instant case does not lie sufficiently in the wake of the commercial activities which Inland Oil & Transport Co. conducted in Illinois so as to be within the ambit of the State's legitimate protective policy on that basis. The accident took place in Alabama. Inland is a Missouri corporation, and plaintiff is a Missouri resident. Plaintiff was treated for his injuries in Alabama and Missouri but never in Illinois. Consequently, *in personam* jurisdiction over defendant cannot be based on service of process under section 17 of the Civil Practice Act.

■■ ■ However, *in personam* jurisdiction may still be obtained over a foreign corporation for a cause of action arising from an occurrence outside of the State of Illinois. Service then may be had under section 16 of the Civil Practice Act. Such jurisdiction does not require a close relationship between the type of business activities conducted in Illinois and the plaintiff's cause of action. Instead, a corporation which has submitted to the jurisdiction of the courts of the State of Illinois may be served with process outside the State the same as a citizen or resident of the State. (Ill. Rev. Stat. 1979, ch. 110, par. 16(1).) Where, as in the instant case, the cause of action sued upon arises from outside the State without close relationship between it and defendant's business activities conducted in Illinois, the requirement of minimum contacts under the due process clause is met if the business activities of the defendant in Illinois are continuous and substantial. (*Gordon v. International Telephone & Telegraph Corp.* (N.D. Ill. 1967), 273 F. Supp. 164.) The so-called long-arm statute was designed to allow the exercise of *in personam* jurisdiction over persons engaged in isolated acts within Illinois if the cause of action arose out of those acts. However, if the acts of such person are not isolated but constitute substantial and continuous business activities, *in personam* jurisdiction may be exercised over foreign corporations in suits unrelated to the Illinois activities. *Gordon v. International Telephone & Telegraph Corp.*

■■ There is little doubt in the instant case that Inland Oil & Transport Co. conducted continuous and substantial business activities within the State of Illinois sufficient to meet the due-process requirement of minimum contact. The affidavits filed by plaintiff in response to Inland's special

appearance reflected a regular pattern of commerce and transportation by Inland throughout the waterways of the State. While Inland argues on appeal that the affidavits were hearsay because they were not made on the personal knowledge of the affiants, no objection to the affidavits was made upon any basis in the trial court. The sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made in the trial court. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Santschi v. Gorter* (1978), 63 Ill. App. 3d 394, 379 N.E.2d 1383.) Accordingly, we conclude that minimum contacts were established sufficient to support *in personam* jurisdiction over Inland regardless of the fact that plaintiff's cause of action arose outside the State and was not the result of defendant's Illinois activities.

■■ Once the requisite minimum contacts have been established, due process requires that a method of service be employed which is reasonably designed to give the defendant actual notice of the pending action against him. (*Milliken v. Meyer.*) Where a corporate defendant is present in Illinois and has submitted itself to the jurisdiction of the courts of Illinois, it may be amenable to service of process under both section 13.3 and section 16 of the Civil Practice Act. (*Braband v. Beech Aircraft Corp.*; *St. Louis-San Francisco Ry. v. Gitchoff.*) Furthermore, section 16 provides for personal service upon any party outside the State in a manner authorized for private corporations by section 13.3. In the instant case, plaintiff personally served process on the president of Inland at its office in St. Louis, Missouri. Since Inland submitted to jurisdiction through its business activities in Illinois, this service was effective. Having determined that Inland was thereby properly served, we need not determine whether Max Terrell, the pilot of the M/V Lady Rosemary, was an agent of Inland for the purpose of service of process.

Defendant finally asserts that the trial court erred in denying its motion to dismiss the complaint on the grounds of *forum non conveniens*. This court has recently addressed the same issue in a similar case, *Espinosa v. Norfolk and Western Ry. Co.* (1980), 87 Ill. App. 3d 1147, 411 N.E.2d 41, *appeal allowed* (1981), 82 Ill. 2d 584. We find *Espinosa* controlling.

■■ In considering objections to a plaintiff's choice of forum on the basis of *forum non conveniens*, the court must consider whether the forum was chosen by the plaintiff for the purpose of frustrating the defendant; whether the defendant is unduly burdened or caused great and unnecessary inconvenience; or whether the court is unnecessarily burdened. Unless the balance of these factors is strongly in favor of the defendant, the forum should not be disturbed. *Espinosa.*

Although defendant notes that it was deprived of the power to

compel the attendance of Missouri witnesses because of the Illinois forum, it has neither alleged nor shown any prejudice which resulted therefrom. Defendant's arguments regarding convenience to the parties and the witnesses is of little merit where the Missouri forum suggested by defendant was only 15 miles from the chosen forum. As in *Espinosa*, there has been no showing that the case unduly burdened the Madison County, Illinois, circuit court or the jurors serving there. Moreover, the occurrence sued upon took place in neither the chosen forum nor the alternate forum suggested as being appropriate by defendant; therefore, proximity to the scene of the occurrence has not been made a factor by the parties.

Accordingly, we conclude that the trial court correctly held that it had *in personam* jurisdiction over the defendant and properly denied defendant's motion to dismiss on the grounds of *forum non conveniens*.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.